WILKERSON v CARLO

Docket No. 46890. Submitted June 12, 1980, at Detroit.—Decided
November 20, 1980. Leave to appeal applied for.

William J. Wilkerson brought an action against John Carlo for
defamation. Defendant moved for accelerated judgment on the
ground that the action was commenced after the expiration of
the one-year period of limitation of actions for libel and slan-
der, which motion was granted. Plaintiff subsequently filed an
amended complaint alleging tortious interference with eco-
nomic relations, and defendant again moved for accelerated
judgment on the same grounds. Wayne Circuit Court, Thomas
J. Brennan, J., granted defendant's motion. Plaintiff appeals,
alleging that the trial court erred in applying the one-year
statute of limitations and asserting that the proper period of
limitation of an action for tortious interference with economic
relations is three years. *Held:*

The trial court erred in applying the one-year period of
limitation of actions for libel and slander. Tortious interference
with economic relations is actionable in and of itself and is
subject to a three-year period of limitation of actions even
though the interference is caused by defamatory statements.
Plaintiff pled such a theory and made sufficient allegations in
support thereof.

Reversed and remanded.

1. LIMITATION OF ACTIONS — APPLICABLE PERIOD FOR LIMITATION OF
   ACTIONS — INTEREST HARMED.
   The focal point in determining what period for limitation of

REFERENCES FOR POINTS IN HEADNOTES

[1] 51 Am Jur 2d, Limitation of Actions § 62.

[2] 51 Am Jur 2d, Limitation of Actions § 63.

[3] 45 Am Jur 2d, Interference §§ 3 *et seq.*, 50.

[4] 50 Am Jur 2d, Libel and Slander § 8 *et seq.*, 540.

[5] 50 Am Jur 2d, Libel and Slander § 27 *et seq.*
    Charge of being "crook." 1 ALR3d 844.

[6] 45 Am Jur 2d, Interference §§ 22, 55.
    What statute of limitations govern actions for interference with
    contract or other economic relations. 58 ALR3d 1027.

actions controls in a particular case is the type of interest allegedly harmed.

2. LIMITATION OF ACTIONS — APPLICABLE PERIOD FOR LIMITATION OF ACTIONS — PLEADINGS.

The applicable period for limitation of actions depends on the theory actually pled where the same set of facts can support either of two distinct actions.

3. TORTS — TORTIOUS INTERFERENCE WITH ECONOMIC RELATIONS — ELEMENTS.

The basic elements which establish prima facie a tortious interference with economic relations are the existence of a valid business relationship or expectancy, knowledge of the relationship or expectancy on the part of the interferer, an intentional interference causing a breach or termination of the relationship or expectancy, and resulting damage to the party whose relationship or expectancy has been disrupted.

4. LIBEL AND SLANDER — DEFAMATION — HARM TO REPUTATION — BASIS FOR CLAIM.

Defamatory statements are those which tend to harm an individual's reputation in a community, and a defamation claim will lie even where there is no proof of any damage to an individual's business relationships or expectancies.

5. LIBEL AND SLANDER — ACCUSATION OF COMMISSION OF CRIME — DEFAMATORY PER SE.

An accusation of a commission of a crime is defamatory per se and is actionable without proof of special harm or loss of reputation.

6. TORTS — TORTIOUS INTERFERENCE WITH ECONOMIC RELATIONS — BASIS FOR BRINGING AN ACTION — LIMITATION OF ACTIONS — DEFAMATION — STATUTES.

Tortious interference with economic relations is actionable in and of itself and is subject to a three-year period for limitation of actions even though the interference is caused by defamatory statements, but a plaintiff must make sufficient allegations to support such a theory of liability (MCL 600.5805[8]; MSA 27A.5805[8]).

*Alfonsetti, Monicatti & Giarmarco, P.C.,* for plaintiff.

*Draugelis, Ashton & Scully,* for defendant.

Before: BASHARA, P.J., and D. C. RILEY and E. A. QUINNELL,* JJ.

E. A. QUINNELL, J. In February and March, 1978, defendant, the executive manager of Northville Downs, made public accusations implicating plaintiff, an owner and trainer of standardbred horses, in a race-fixing scheme at the track. Defendant also barred plaintiff from future racing at Northville Downs. Plaintiff commenced an action against defendant for defamation on April 16, 1979. The Circuit Court granted defendant's motion for accelerated judgment since the action was commenced after the expiration of the one-year period of limitation of actions for libel and slander. MCL 600.5805(7); MSA 27A.5805(7).

Thereafter, on June 6, 1979, plaintiff filed an amended complaint, alleging tortious interference with advantageous economic relations. Defendant again moved for accelerated judgment on the basis that the complaint continued to be one for defamation. Plaintiff's position was that the amended complaint was governed by the three-year statute of limitations for torts. MCL 600.5805(8); MSA 27A.5805(8). Following a hearing on August 10, 1979, the circuit court granted the motion for accelerated judgment. Plaintiff now appeals as of right, asserting that the three-year statute of limitations should have been applied.

The type of interest allegedly harmed is the focal point in determining what limitations period controls. *Stringer v Board of Trustees of Edward W Sparrow Hospital,* 62 Mich App 696, 699-700; 233 NW2d 698 (1975), *lv den* 395 Mich 768 (1975), *Glowacki v Motor Wheel Corp,* 67 Mich App 448, 459-460; 241 NW2d 240 (1976). Where the same set

* Circuit judge, sitting on the Court of Appeals by assignment.

of facts can support either of two distinct actions, the applicable limitations period is the one controlling the theory actually pled. *Campos v General Motors Corp,* 71 Mich App 23, 25-26; 246 NW2d 352 (1976).

The elements of tortious interference with economic relations are: (1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy on the part of the interferer, (3) an intentional interference causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy has been disrupted. *Northern Plumbing & Heating, Inc v Henderson Brothers, Inc,* 83 Mich App 84, 93; 268 NW2d 296 (1978), *lv den* 405 Mich 845 (1979). Defamatory statements are those which tend to harm an individual's reputation in the community. Unlike an action for tortious interference with economic relations, a defamation claim will lie even where there is no proof of any damage to the individual's business relationships or expectancies. An accusation of a commission of a crime, as here,[1] is defamatory per se and is actionable without proof of special harm or loss of reputation on a defamation theory. This is also unlike a tortious interference theory which requires proof of actual damage. See, *Tumbarella v The Kroger Co,* 85

---

[1] MCL 431.50; MSA 18.966(20) provides:

"Any person influencing or attempting to influence in any manner, by offer of money, thing of value, future benefit, favor, preferment or by any form of pressure or threat, or seeking or having an agreement or understanding, or conniving with any owner, jockey, driver, trainer, groom, valet, agent or other person associated with or interested in any stable of horses, horse, or race in which the horse participates, to predetermine the result of any such race, is guilty of a misdemeanor and shall be punished for each offense by a fine of not less than $250.00 nor more than $10,000.00, or by imprisonment in the county jail for not more than 90 days, or by both such fine and imprisonment."

Mich App 482, 493; 271 NW2d 284 (1978), *lv den* 406 Mich 939 (1979).

Despite the differences between the defamation and tortious interference actions, defendant contends that, where the claimed interference with business relationships or expectancies has occurred through the making of allegedly defamatory statements, any damage is merely incident to the defamation and does not present a separate cause of action. In *Harrison v Arrow Metal Products Corp,* 20 Mich App 590, 608-609; 174 NW2d 875 (1969), *lv den* 383 Mich 816 (1970), one panel of this Court reached the position advocated by defendant. However, in *Campos, supra,* where defendant argued that plaintiff's action for intentional infliction of emotional distress was merely a subterfuge to avoid the limitations period controlling a slander action, another panel of this Court held that the two torts protected distinct interests. The *Campos* Court held:

"*Harrison v Arrow Metal Products Corp,* 20 Mich App 590; 174 NW2d 875 (1969), *lv den* 383 Mich 816 (1970), does not compel a different result. In *Harrison* plaintiff argued that the false accusations of criminal activity deprived him of other employment and that this deprivation of employment was a separate tort. This Court held that it was not. This case may be distinguished on that basis. The courts of this state have recognized an intentional infliction of mental distress as a separate cause of action. *Warren v June's Mobile Home Village & Sales, Inc,* [66 Mich App 386; 239 NW2d 380 (1976)]. There is no need to bootstrap this claim on a claim for slander." 71 Mich App 23, 26-27.

*Harrison* holds that this state has not recognized tortious interference with economic relations as actionable in and of itself. We disagree. *Meyering*

*v Russell,* 53 Mich App 695, 704-705; 220 NW2d 121 (1974), *rev'd on other grounds* 393 Mich 770 (1974),[2] *Dassance v Nienhuis,* 57 Mich App 422, 432-433; 225 NW2d 789 (1975), *National Pharmaceutical Services, Inc v Harrison Community Hospital,* 67 Mich App 286, 294; 241 NW2d 76 (1976), *lv den* 397 Mich 824 (1976). Thus, the rationale of *Campos* is applicable to this case. In our opinion, actions alleging tortious interference with economic relations are subject to the three-year statute of limitations of MCL 600.5805(8); MSA 27A.5805(8), even though the unlawful interference was caused by defamatory statements.[3]

---

[2] The Supreme Court order in *Meyering* provides in relevant part:

"An application for leave to appeal having been filed, we hereby grant leave to appeal December 23, 1974 and summarily reverse the decision of the Court of Appeals for the reasons set forth in the opinion in this case of Judge O'HARA of the Court of Appeals 'dissenting in part and concurring in part' and remand to the circuit court for further proceedings as provided in such opinion."

Judge O'HARA's opinion in *Meyering* accepted that tortious interference with business relations was actionable. His disagreement with the Court's majority was whether the evidence adduced supported a conclusion that tortious interference had occurred. We can only assume, then, that the Supreme Court also recognizes tortious interference as a cause of action or else it would not have premised its reversal on Judge O'HARA's *Meyering* opinion.

[3] Decisions from other jurisdictions split on the issue of whether tortious interference with economic relations accomplished through defamatory statements is actionable in its own right or is merely subsumed within the general category of defamation. The weight of authority, however, seems to be on the side of treating tortious interference as a separate concept and action. *Inter alia: Clark v Figge,* 181 NW2d 211 (Iowa, 1970), *Boose v Hanlin,* 346 P2d 932 (Okla, 1959), *Colucci v Chicago Crime Comm,* 31 Ill App 3d 802; 334 NE2d 461 (1975), *Johnson v Graye,* 251 NC 448; 111 SE2d 595 (1959), *Loughrey v Landon,* 381 F Supp 884 (ED Pa, 1974) (applying Pennsylvania law), *Phillips Chemical Co v Hulbert,* 301 F2d 747 (CA 5, 1962) (applying Texas law). *Contra: Wild v Rarig,* 302 Minn 419; 234 NW2d 775 (1975), *app dismissed for want of jurisdiction and cert den* 424 US 902; 96 S Ct 1093; 47 L Ed 2d 307 (1976), *rehearing den* 425 US 945; 96 S Ct 1689; 48 L Ed 2d 190 (1976), *Noel v Interboro Mutual Indemnity Ins Co,* 31 App Div 2d 54; 295 NYS2d 399 (1968), *aff'd* 29 NY2d 743; 326 NYS2d 396 (1971). See generally on the relationship between the torts of defamation and unlawful interference with economic relations, Anno: *What statute of limitations governs action*

Defendant also contends that plaintiff's amended complaint fails to set forth anything other than a defamation action. Although we have concluded that an action for tortious interference with business relations can represent a separate basis for recovery where defamatory statements represent the cause of the damage, plaintiff must still make sufficient allegations to support his theory of liability. Defendant notes that plaintiff's amended complaint alleges dissemination of the allegedly defamatory statements to the community at large, and not to individuals who could have some influence on the type of economic relationships plaintiff enjoys in the racing community. We do not view plaintiff's use of the term "community at large" to be fatal to his complaint. The "community" alleged could be shown to be a very small community, namely, the harness racing "community at large". Considering the facts most favorable to plaintiff, there are only a small number of places where plaintiff could ply his trade. These tracks could reasonably, if not certainly, be expected to be aware of defendant's accusations. Defendant could reasonably have expected other tracks to bar plaintiff from entering his horses in their races, and thus, ruin plaintiff's business. In fact, by paragraph 14 of his amended complaint, plaintiff avers that this is precisely what happened:

"As a direct and proximate result of Defendant's intentional interference with Plaintiff's existing and prospective advantageous economic relationships, Plaintiff suffered injury to his business and his advantageous economic relationships, to his damage in the amount of Five Hundred Thousand ($500,000.00) Dollars as follows:

*for interference with contract or other economic relations,* 58 ALR3d 1027.

"a. Plaintiff was no longer admitted at the various tracks throughout the State of Michigan as an owner of horses and was, therefore, forced to sell his horses at a loss.

"b. Plaintiff was no longer admitted at the various tracks throughout the State of Michigan as a trainer of horses and, therefore, lost the customers whose horses he trained.

"c. Plaintiff was forced completely out of the harness racing business.

"d. Plaintiff experienced a loss of profits that he reasonably expected as an owner and trainer of race horses."

As defendant argues, the allegations contained in plaintiff's amended complaint could have been averred in a complaint labeled as one seeking to rectify injuries inflicted through defamation. In our opinion, however, this does not preclude recovery on the theory actually pled.

Reversed and remanded for proceedings consistent with this opinion.