*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NEVIN COOPER-KEEL,

        Plaintiff-Appellant,

v

ROBERT J. BAKER and RJ BAKER & ASSOCIATES, PLLC,

        Defendants-Appellees.

FOR PUBLICATION
May 13, 2025
2:03 PM

No. 370456
Allegan Circuit Court
LC No. 2023-067243-CZ

Before: BORRELLO, P.J., and RIORDAN and PATEL, JJ.

RIORDAN, J.

Plaintiff Nevin Cooper-Keel, proceeding *in pro per*, appeals as of right the trial court's order granting summary disposition in favor of defendants Robert J. Baker ("Baker") and RJ Baker & Associates, PLLC ("RJ Baker") pursuant to MCR 2.116(C)(7), (C)(8), and (C)(10). On appeal, plaintiff argues that the trial court erred by dismissing his claims for intentional infliction of emotional distress (IIED) and injurious falsehood. We disagree and affirm.

## I. FACTS

Plaintiff is a 2014 law school graduate who, despite his desire for it to happen, has never been granted membership in the State Bar of Michigan. However, between June 2015 and February 2016, he worked as a paralegal for defendant RJ Baker. On or about January 29, 2016, plaintiff was summoned to the RJ Baker office conference room for a meeting with defendant Baker and Steve Vargo, both of whom were attorneys working for defendant RJ Baker at that time.[1] At the meeting, defendant Baker informed plaintiff that he was being fired because Vargo was dissatisfied with his work performance. Plaintiff, however, surmised that he really was being fired because Vargo was "angry" and "jealous" of plaintiff's satisfactory work performance. Plaintiff then, promptly, sought unemployment benefits, which he ultimately received after

---

[1] While not stated in the complaint or clearly explained elsewhere in this case, it is implied that defendant Baker is, perhaps, a founding member of defendant RJ Baker.

defendants unsuccessfully pursued an administrative appeal to prevent the payment of those benefits.

Eventually, in December 2020, plaintiff sought admission to the state bar. A representative of the state bar, as part of a corresponding character-and-fitness investigation, contacted defendants to discuss plaintiff. Defendants, specifically defendant Baker, informed the representative that plaintiff's " 'work product was not up to the firm's standards,' " and that that was the reason for [his] discharge." According to plaintiff's complaint, defendants' statements were false, defamatory, and caused him emotional distress. Plaintiff added that he was "still having to answer to the State Bar" for these statements. Thus, plaintiff brought claims for defamation, intentional and negligent infliction of emotional distress, and violation of the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq*.

Defendants moved for summary disposition under MCR 2.116(C)(7), (C)(8), and (C)(10), arguing that plaintiff's claims were barred by the applicable statutes of limitations and, alternatively, that they were barred by Rule 15, Section 10 of the Rules Concerning the State Bar of Michigan ("SBM Rule 15"), which provides that "[a] person is absolutely immune from suit for statements and communications transmitted solely to the State Bar staff" in the course of a character-and-fitness investigation.

Plaintiff then filed his first amended complaint. The amended complaint substantively recited the same allegations as the original complaint but added a fourth claim for injurious falsehood.[2] Defendants moved for summary disposition of the amended complaint as well, again arguing that plaintiff's claims were barred by the applicable statutes of limitations and absolute immunity.

In his response brief, plaintiff conceded that he did not "object to the [defamation] and whistleblower claims being dismissed under the statute of limitations." However, plaintiff argued that "both the injurious falsehoods claim and the IIED claims are not time barred, nor could the state give immunity for lying even if it wanted to."[3] With regard to the latter argument, plaintiff asserted that "committing perjury negates any grant of immunity," and in this case, defendants' statements to the state bar were false and therefore comparable to perjury.

After hearing the parties' respective arguments, the trial court granted defendants' motion for summary disposition, reasoning that, first, the parties agreed that the defamation and WPA claims were barred by the applicable statutes of limitations, so defendants were entitled to summary disposition of those two claims under MCR 2.116(C)(7). Second, with regard to the remaining claims, i.e., the IIED and injurious-falsehood claims, defendants were entitled to summary disposition under MCR 2.116(C)(10) because SBM Rule 15 provides "immunity" for statements given in the course of a character-and-fitness investigation. Third, and alternatively,

---

[2] As explained *infra*, the tort of injurious falsehood essentially is defamation as it relates to title to property.

[3] Plaintiff did not reference his claim for negligent infliction of emotional distress, and he does not pursue that claim on appeal.

defendants were entitled to summary disposition of the IIED and injurious-falsehood claims under MCR 2.116(C)(8) because plaintiff failed to establish that "he does not have a license to practice law in the State of Michigan because of this single statement by Defendant Baker."

The trial court then entered its order memorializing its opinion from the bench. This appeal followed.

## II. DISCUSSION

### A. STANDARD OF REVIEW

"A trial court's grant of summary disposition is reviewed de novo." *Feyz v Mercy Mem Hosp*, 475 Mich 663, 672; 719 NW2d 1 (2006). "A motion for summary disposition brought pursuant to MCR 2.116(C)(8) tests the legal sufficiency of the complaint on the allegations of the pleadings alone." *Id*. "When a challenge to a complaint is made, the motion tests whether the complaint states a claim as a matter of law, and the motion should be granted if no factual development could possibly justify recovery." *Id*.

"A motion under MCR 2.116(C)(10), on the other hand, tests the factual sufficiency of a claim." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (emphasis omitted). "When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. "A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact." *Id*.

Finally, we review de novo the interpretation of administrative or other legal rules. See *Wenkel v Farm Bureau Gen Ins Co of Mich*, 344 Mich App 376, 383; 1 NW3d 353 (2022).

### B. ANALYSIS

Plaintiff argues that the trial court erred by dismissing his claims for IIED and injurious falsehood because SBM Rule 15 does not provide absolute immunity from false statements, and because causation is a question of fact for the jury. We disagree.

With regard to the tort of IIED, "the plaintiff must present evidence of (1) the defendant's extreme and outrageous conduct, (2) the defendant's intent or recklessness, (3) causation, and (4) the severe emotional distress of the plaintiff." *Walsh v Taylor*, 263 Mich App 618, 634; 689 NW2d 506 (2004).

With regard to the tort of injurious falsehood, "[i]njurious falsehood cases typically concern derogatory or disparaging communications regarding the title to property or its quality." *Kollenberg v Ramirez*, 127 Mich App 345, 350; 339 NW2d 176 (1983).[4] "However, the gist of

---

[4] "Although cases decided before November 1, 1990, are not binding precedent, MCR 7.215(J)(1), they nevertheless can be considered persuasive authority[.]" *In re Stillwell Trust*, 299 Mich App 289, 299 n 1; 829 NW2d 353 (2012).

the tort is some interference with an economically advantageous relationship which results in pecuniary loss rather than an action that directly affects property." *Id*. at 350-351. The elements of that tort are as follows:

> One who publishes a false statement harmful to the interests of another is subject to liability for pecuniary loss resulting to the other if
>
> (a) he intends for publication of the statement to result in harm to interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and
>
> (b) he knows that the statement is false or acts in reckless disregard of its truth or falsity. [*Id*. at 352 (quotation marks and citation omitted).]

Turning to the question of absolute immunity, MCL 600.904 generally provides that our Supreme Court has the authority to organize the state bar and "to adopt rules and regulations" in that regard. See *In re Mardigian Estate*, 502 Mich 154, 191 n 11; 917 NW2d 325 (2018) (opinion by MCCORMACK, J.) (explaining that under 1935 PA 58, the Court was given "the authority to create and regulate the State Bar of Michigan"). In accordance with that statutory authority, "the Court adopted the Supreme Court Rules Concerning the State Bar of Michigan . . . ." *Id*. SBM Rule 15 provides, in relevant part, as follows:

> *A person is absolutely immune from suit for statements and communications transmitted solely to the State Bar staff, the district committee, the standing committee or the Board of Law Examiners, or given in the course of an investigation or proceeding concerning the character and fitness of an applicant for admission to the bar.* The State Bar staff, the members of the district and standing committees and the members and staff of the Board of Law Examiners are absolutely immune from suit for conduct arising out of the performance of their duties. [Emphasis added.]

This rule closely parallels MCR 9.125, which provides immunity for statements given to the Attorney Grievance Commission and Attorney Discipline Board, as well as MCR 9.263, which provides immunity for statements given to the Judicial Tenure Commission. MCR 9.125 provides, in relevant part:

> A person is absolutely immune from suit for statements and communications transmitted solely to the administrator, the commission, or the commission staff, or given in an investigation or proceeding on alleged misconduct or reinstatement. . . .

MCR 9.263 provides, in relevant part:

> A person is absolutely immune from civil suit for statements and communications transmitted solely to the commission, its employees, or its agents, or given in an investigation or proceeding on allegations regarding a respondent, and no civil action predicated upon the statements or communications may be instituted against a grievant, a witness, or his or her counsel. . . .

The few Michigan cases discussing those court rules have concluded that they provide broad immunity, so long as the statements at issue are, essentially, within the scope of the investigation.[5] See, e.g., *Kelley v Peet*, unpublished per curiam opinion of the Court of Appeals, issued February 25, 2016 (Docket No. 326669), p 6 ("The purpose of MCR 9.125 is to provide absolute immunity to people for statements they make to the AGC, with the goal of protecting the public and legal profession, and leaving uncloaked unprivileged communications."). Indeed, the general rule is that a party protected by absolute immunity is shielded from all tort liability. See *Petipren v Jaskowski*, 494 Mich 190, 211; 833 NW2d 247 (2013).

Here, the parties do not dispute that our Supreme Court has the authority to promulgate SBM Rule 15, thereby providing absolute immunity to those individuals and entities, such as defendants here, who provide information to the state bar in the course of a character-and-fitness investigation. Nor do the parties dispute that, as a general proposition, the statements at issue otherwise are within the scope of SBM Rule 15 as they were provided solely to the state bar and concern plaintiff's character and fitness to be an attorney. Instead, plaintiff argues that defendants' statements to the state bar are not protected by absolute immunity because those statements were false. That is, according to plaintiff, absolute immunity does not protect perjury. In support of this proposition, plaintiff cites *People v McIntire*, 232 Mich App 71; 591 NW2d 231 (1998), rev'd

---

[5] The term "absolute immunity" generally applies to high-level governmental officials, such as judges and prosecutors. Arguably, SBM Rule 15, as well as MCR 9.125 and MCR 9.263, should instead refer to "absolute privilege," not "absolute immunity." In this regard, there is a longstanding line of caselaw providing that statements made in judicial or quasi-judicial proceedings by witnesses are "absolutely privileged" against defamation claims. See *Oesterle v Wallace*, 272 Mich App 260, 264; 725 NW2d 470 (2006).

In *Kalish v Illinois Ed Ass'n*, 157 Ill App 3d 969; 510 NE2d 1103 (Ill Ct App, 1987), the Illinois Court of Appeals recognized "absolute privilege to communications with the Character and Fitness Committee." *Id*. at 976. The court reasoned that the Character and Fitness Committee is a "quasi-judicial body," and "statements made during quasi-judicial proceedings are absolutely privileged." *Id*. at 971, 976. The court thus upheld the trial court's dismissal of the plaintiff's defamation claim against his former employer for allegedly defamatory statements made by that former employer to the Character and Fitness Committee because the former employer was protected by absolute privilege. *Id*. at 978-979. With this reasoning, *Kalish* sets forth a proper analytical framework for our consideration of the matter before us. See also *Capeheart v Northeastern Illinois Univ*, 2010 WL 894052 (ND Ill, 2010) ("[T]he cases Terrell relies upon to support his contention address the doctrine of absolute *privilege*, not absolute *immunity*. The doctrines are distinct from one another. For instance, the doctrine of absolute privilege applies to statements made in judicial or quasi-judicial proceedings by private individuals and public officials alike. In contrast, absolute immunity applies only to public officials and its application is not restricted to statements made in judicial or quasi-judicial proceedings.") (citations omitted).

Our Supreme Court, should it agree with *Kalish*'s analysis, may wish to consider amending SBM Rule 15, as well as MCR 9.125 and MCR 9.263.

461 Mich 147 (1999), in which this Court held that a grant of transactional immunity under MCL 767.6 is ineffective when the witness commits perjury. *Id*. at 91-92.[6]

The relationship between absolute immunity and perjury is not relevant here. Rather, the question is whether defendants are protected by absolute immunity from plaintiff's tort claims of IIED and injurious falsehood, notwithstanding plaintiff's allegation that the statements at issue were false. In other words, the question is whether defendants are protected from tort liability by absolute immunity, regardless of whether their statements arguably could be false. See *Petipren*, 494 Mich at 211. In this regard, courts generally have held that absolute immunity applies to false or misleading statements, so long as those statements are related to the proceedings in which they were made. See, e.g., *Adams v Hanson*, 656 F3d 397, 405 (CA 6, 2011):

> Because Hanson's actions fell within her prosecutorial role, she is entitled to absolute immunity even if her statements were false or misleading. As this court has recently emphasized, prosecutors do not forfeit their absolute immunity when they knowingly make false statements while advocating before the court, so long as the statements were related to the proceedings in which they were made. Therefore, even if Hanson made false representations to the trial judge regarding Adams's availability, she is protected by absolute immunity because she was serving as an advocate in judicial proceedings, when she made statements related to those proceedings. [Cleaned up.]

See also *N Brevard Co Hosp Dist v Deligdish*, 398 So3d 1126, 1130-1131 (Fla Dist Ct App, 2024) (explaining that absolute immunity "even applies to statements that are false or malicious, so long as they occurred within the scope of a public employee's duties"); *Deters v Hammer*, 568 F Supp 3d 883, 888-889 (SD Ohio, 2021) (explaining that "a statement made in a judicial proceeding enjoys an absolute privilege against a defamation action as long as the allegedly defamatory statement is reasonably related to the proceeding in which it appears," and this absolute privilege "shelter[s] knowingly false statements"). Moreover, our Supreme Court has held that absolute immunity applies regardless of whether the defendant acted in good faith. *Am Transmissions, Inc v Attorney Gen*, 454 Mich 135, 143-144; 560 NW2d 50 (1997).

Accordingly, given this authority, the trial court correctly determined that defendants' statements, even if false, are protected by absolute immunity under SBM Rule 15.[7] In a nutshell, because absolute immunity protects against all tort liability, see *Petipren*, 494 Mich at 211, and because absolute immunity applies even when the underlying statements are false, see *Adams*, 656

---

[6] Our Supreme Court reversed that holding, stating that "immunity [is not] forfeited completely upon the giving of false testimony." *People v McIntire*, 461 Mich 147, 160; 599 NW2d 102 (1999).

[7] If this Court applied an alternate "absolute privilege" analysis, defendants' allegedly false statements still would be protected from tort liability. See *Parks v Johnson*, 84 Mich App 162, 165-166; 269 NW2d 514 (1978).

F3d at 405, defendants cannot be liable for plaintiff's claims of IIED and injurious falsehood. As a result, the trial court correctly granted summary disposition in favor of defendants.[8]

Finally, having disposed of plaintiff's sole issue on appeal, the only remaining question is whether this Court should grant defendants' request, included in their brief on appeal, to sanction plaintiff for filing a vexatious appeal. See MCR 7.216(C). We decline the invitation to do so at this time because "[a] party's request for damages or other disciplinary action under MCR 7.216(C) must be contained in a motion filed under this rule. A request that is contained in any other pleading, including a brief filed under MCR 7.212, will not constitute a motion under this rule." MCR 7.211(C)(8). See *Barrow v Detroit Election Comm'n*, 305 Mich App 649, 683-684; 854 NW2d 489 (2014) ("To the extent that defendants are asking for sanctions against plaintiffs for filing a vexatious appeal, defendants must file a separate motion. . . . [T]he sanctions request set forth in defendants' appellate brief does not constitute a motion under the court rule."). Such a motion may be filed "at any time within 21 days after the date of the order or opinion that disposes of the matter that is asserted to have been vexatious." MCR 7.211(C)(8).

## III. CONCLUSION

The trial court did not err by granting summary disposition in favor of defendants because they are protected by absolute immunity under SBM Rule 15. Therefore, we affirm.

/s/ Michael J. Riordan
/s/ Stephen L. Borrello
/s/ Sima G. Patel

---

[8] Arguably, the trial court should have granted summary disposition under MCR 2.116(C)(7) (immunity granted by law), not (C)(8) or (C)(10). Regardless, its ultimate ruling is correct. Having so concluded, it is unnecessary to address plaintiff's argument that the trial court erred by alternatively concluding that he failed to show causation.